172 Cromer against the Department of Veterans Affairs If you all can give counsel here an opportunity to get clear Okay, I think we're just about set. Mr. Morin, you may proceed when you're ready. If you need some water, go ahead. Get yourself some water. Good morning, Your Honor. May it please the Court. The question presented in this appeal is whether an adverse presumption should be granted in favor of a veteran claimant when the government lost service medical records that may very well have proved an element of his claim. We believe, Your Honor, that it should. Now, generally, the adverse presumption is well settled throughout the jurisdictions in case law. So there's little question in our minds that the adverse presumption should apply in veterans' cases. The only question is the threshold upon which it should apply. As the Court may be aware from the briefing, in traditional inter-parties actions throughout the jurisdictions, there are generally two different levels that may be applied in order to create an adverse presumption. Some courts, actually the majority will concede, require a showing of bad faith that the party intentionally destroyed the documents, while other courts require negligence. The Turner case is actually pretty instructive on the negligence requirement, and it talks about the idea of the adverse presumption in large part being to restore the evidentiary balance between two parties. If one party was in control of the documents and there's uncertainty about what they may have said, then the other party should get the benefit of the doubt rather than the party whose watch it was on that the documents were destroyed. What if there was no negligence whatsoever? We would assert, Your Honor, in the context of the veterans' system, which is uniquely paternalistic, as this Court has talked about in the Bailey case and has written about by Congress, that showing negligence actually shouldn't be required. Or saying it a different way, if it is, it should be presumed. So there should be an inference of negligence any time the government loses a document, no matter why they lost it? Well, I'd say it one of two ways, Your Honor. The answer is, yes, in the veterans' system, subject to certain safeguards that I'd be happy to address. Of course, it's not in every circumstance that an adverse presumption should be, even in the veterans' situation, applied based on the loss of the document. Well, in this case, there was a fire. That's correct. Back in 1973. That's correct, Your Honor. And was the government ever held liable for that fire? Were they negligent in not protecting the documents from the fire? They were never found negligent for not protecting the documents from the fire. But our point is this, Your Honor. In the veterans' system, where all ties are supposed to go to the runner, both as a matter of case law, as the Court observed in Bailey and as the Supreme Court has observed, and also as a matter of congressional statute under 5107, in the veterans' system, which is not inter partes, and which benefits of the doubt are supposed to go to the veteran to make sure that all legitimate claims for these veterans are paid, in those circumstances, either a showing of negligence shouldn't be required, or if you require a showing of negligence, it should be presumed. Two ways of saying the same thing. But it's a unique system, as the Court has recognized time and time again. As the Court has said in 5107B, I'm sorry, that would be Congress, in 38 U.S.C. 5107B, when there's an approximate balance of the evidence, the benefit of the doubt needs to go to the claimant. Now, it's undisputed that the Veterans Administration is the custodian of service medical records. So it's its responsibility to maintain the records. But is the balance based upon the content of the documents, or is it based on the fact that the documents were lost? I don't quite understand your argument. The fact that the documents were lost when they were in the Veterans Administration's hands, when they were on their watch, we would say that even absence of showing of negligence, because there's a question as to what's in the documents. I think I can accurately say that even I can't tell you for sure what was in those documents as much as I would like to advocate my client's position. But I think I can tell you equally certainly that the government doesn't know for sure either. And what we're saying is when the Veterans Administration is responsible for maintaining those documents, and we're supposed to be looking out here in the ex parte system for the veteran, if there's a question as to what was in those documents, or a question as to what happened in that fire, we give the benefit to the veteran. Suppose that it was established that the fire was the product of arson, and not by an employee of the Veterans Administration, but some outsider came in and burned the place down. Same rule? Absolutely, Your Honor, with the reason being that the veteran has entrusted those documents to the government, and even if it's not the government's fault, and I know this differs from the inter partes where we're trying to do the balance between the parties, and the parties have the burden of proof beyond the middle ground. In the veteran's system, if the document is lost, and it may have been essential to the veteran's claim, we should give the benefit of the doubt to the veteran. Okay, now, next question along this line, though, is how do we assess the significance of the missing document? Let me ask the question this way. A veteran comes in and says, I suffered a knee injury in the service. I don't have any proof of it, but if you had records, there would be evidence of treatment for a knee injury, and my knee is getting worse. Right. All right. Taking those facts as all the facts available to us, what do you do with that case? The records are burned. Well, if Your Honor will indulge me, I think there's four levels to look at that on, Your Honor, in response. The first is, is there any corroborating evidence at all to meet a threshold showing that the document may very well have been lost? Now, that was where I was going, so if you can expand on that, yeah. Sure. So we think that there should be at least some minimum threshold, as required in other courts, other jurisdictions, to show some indicia that the document very well may have been a type of document to support. Okay. What we have is his assertion that he had this injury in service. Threshold met? It's going to come up a lot. I mean, if we adopt this rule, I assume that that will probably be the majority of cases. Right. That alone, in the hypothetical, and all we have is his statement to that effect, that might be insufficient. This is not such a case, I would point out, Your Honor, because we have three different physicians, the statement by the sister and others, but maybe his mere statement alone, that might not reach the threshold level. He might need to get a doctor's opinion linking it. Interestingly enough, on the subject of the knee injury, Your Honor, if I may, the decision came out six days before our reply brief, so it's not in the reply briefs, and I apologize for that. But in Nicholson v. Washington, there was a knee injury, and a doctor's statement afterwards that it was consistent with the claimant's comment, his claim, that was corroborating evidence. That would be the type of thing that could corroborate and give rise to the adverse inference, the adverse presumption. Now let me ask you this question, and this isn't really directly presented by this appeal, at least I don't think it is. Okay. But the board, if I understand the board's rationale correctly, said, well, you have these various pieces of evidence that we don't think they're sufficient, notwithstanding that the corroborating evidence of medical records were missing. You didn't appeal that aspect, as I understand it, of the board's decision. I mean, I take it from the description, at least in the Court of Appeals for Veterans Claims opinion, the only issue was the presumption issue. You didn't say, how could the board say that in light of the fact that this is the best the guy could do, and it's pretty good. Right. We would respectfully submit that we did appeal that by appealing the foundation of the board's decision in the first place. Your Honors, if you look at the joint appendix, while the portion that the government relies on and that the appellate court relied on for the finding of the preponderance of the evidence against him, immediately preceding that on appendix page JA23, there's a pretty good description of what the problem with the claim was. And the very foundation was that he didn't have the evidence from the service medical records. Well, that's right. And frankly, I found that portion of the board's opinion a little puzzling. But I also was, I guess, a little surprised to read in the opinion of the court that that aspect of the board's decision had not been challenged, which is what I take away from the court's opinion. It may well be. I was not involved in that level of the opinion. But from my understanding, the way that we would explain it to Your Honor is that by saying that the entire decision was based on a false pretense or an incorrect pretense, which is that we should throw out three doctors' opinions, throw out the sister's statement, all because he doesn't have direct proof of what happened in that hospital, when the only evidence that would have been direct proof of that was lost by the government, we're challenging the very foundation of the entire decision. So we're not asking the court to be very clear. We're not asking Your Honors to reweigh the evidence and decide today that Mr. Cromer is entitled to veterans' benefits. We're asking for only one simple thing, that the case be remanded, so that for one of the three aspects of the claim proving in-service occurrence, for that aspect alone, that a presumption, and a rebuttable presumption, mind you, but that a presumption be applied in Mr. Cromer's favor just to presume, subject to rebuttal, that the hospital records would have supported what he said and what the three doctors said. That's it. We're not asking for an irrebuttable presumption. If the government can come forward at that point in time and show that that couldn't have happened through medical evidence or something else, then maybe they could do that. That may be difficult to do, but that also works. If there's no medical record evidence at that point, what happens? If there's no medical record evidence? Well, then on that aspect of the claim, if it's consistent with what he's showing today, dementia, on that one of three aspects, the in-service occurrence, then we give him the benefit of the doubt. Of course, he still has to prove other things, that that in-service occurrence could have had ties to his current dementia. We get no presumption on that. We're not asking for presumption beyond what would have been in those medical records, fever of 107 to 108 degrees, burrow hole in his head, and the brain damage that has been attested to. All we're asking is for presumption on those limited medical records that were lost that they would have supported his claim. Not for the overall claim, not for the connection. So you're really asking to establish a double presumption, a presumption of negligence on the part of the Veterans Administration and a presumption that the records lost in the fire would have supported service connection. Your Honor, that's one way of looking at it, and actually it was captured, I think, fairly eloquently in the opposition brief. But truth be told, it could be looked at a different way, as we said in the reply brief. It's the same thing we're asking for, and how I would say would simplify it, and that is when you take the common law principle of adverse presumption, when you incorporate it into the paternalistic VA system, what we're trying to do is we're trying to make sure that maybe one or two or a dozen extra Veterans who might not have been entitled might receive some compensation with this presumption. But we need to make sure that the mass is more, that every Veteran is taken care of with their claim. And in this situation, we would submit not even negligence is required. We require, as in other adverse presumption cases, first, a showing that the documents were reasonably likely, through corroboration or otherwise, to support the claim. Second, something I haven't mentioned yet, and that is the unavailability of other evidence. Of course, if there's something that other direct evidence could prove, then you don't get an adverse presumption. But here there is none. We're in the 40s. It's service medical records. And there's another thing that's undisputed. Mr. Cromer had nothing to do with them being lost. Actually, oddly enough, maybe even perversely enough, there is other evidence in this case. There is. I mean, I'm not sure what. If your argument is the presumption ought to apply when there's no other evidence, maybe you lose this case on the ground that you had plenty of evidence. I mean, if there were a perverser result in that, I'd be hard-pressed to find it. But I wonder whether you really want to make that argument. That's not an argument we'll make right now. We'd argue for a remand, Your Honor. Look, when we read the briefs and we read the record, we had the same reaction as you did, that it seemed like even without a presumption, maybe the claim should be granted. But that's not why we're up here on appeal. We understand that Your Honors are not reweighing the evidence here. We think, though, that with a rebuttable presumption, if it gets set back down for the evidence to be reweighed, that Mr. Cromer's claim is legitimate, and we're pretty confident that when the evidence is reweighed, it will come out in our client's favor. And with that, I just reserve the remaining time for rebuttal unless the Court has any further questions. Thank you, Mr. Moran. Let me ask you – well, I'll ask you later. We will preserve a couple of minutes for rebuttal in the event. Let's see, Mr. Gierberg. It pleases the Court. Mr. Cromer's counsel asked this Court to modify the law by creating an adverse presumption which is contrary and inconsistent with federal statute, federal common law, and the VA's rules. However, this Court lacks jurisdiction to entertain a single issue on appeal because this issue is not justiciable under Article III of the Constitution. Under Article III, there must be a live case or controversy, which means there cannot be a requested issue and advisory opinion that would not affect the outcome of the case. In this case, the appeal – the single issue on appeal cannot affect the outcome below. Under Thomas v. Nicholson, the rule is that generally a presumption can be overcome by preponderance of the evidence. In this case, we already have a finding from the Board that preponderance of the evidence weighed against a claim of service connection. And since there was some discussion about the evidence, I would like to discuss some of that evidence that the Board found in support of preponderance of the evidence finding. But the absence of the presumption weighed in the balance of the evidence, did it not? Your Honor, I would suggest that that question depends upon an assumption that a presumption is itself evidence, which this Court has held that a presumption is not evidence, and that a presumption, in fact, disappears upon the presentation of evidence reaching a certain level to overcome that presumption. So if this case were to be – if it were to reverse time and go back and insert the presumption, the presumption would have been overcome and would have disappeared upon the preponderance of evidence, which the Court found to be the case, that there was a preponderance of the evidence against service connection. But that is considered on the basis of the presumption. I'm sorry, I didn't understand. It was not considered on the basis of the presumption at that point. Your Honor, but again, because the presumption is itself not evidence, Mr. Cromer could not rely upon the presumption to add that with whatever evidence he might have presented. No, presumption is not the evidence, but presumptions are probably better to weigh the evidence's weight, as Judge Lynn pointed out. You re-weigh the evidence in a different perspective at that point. So does the Board and the Court below have the ability to re-weigh the evidence based upon a rebuttable presumption? Your Honor, we would suggest that's not the case, that if it went back, that there's already been a presumption – sorry, not a presumption, but a preponderance of the evidence finding, and that would have overcome under Thomas D. Nicholson the presumption. But even if the Court were to get to this issue of this presumption, as the Court recognized in our briefs, we discuss it as a double presumption. This presumption is inconsistent with the statutes of federal common law and the VA's rules. And beginning with the statutes, under 5107, there's the general rule that it's the claimant's burden to come forward with evidence. This is inconsistent with that. In addition – Well, what if the evidence was not available? The government was in control of the evidence, and the government just brought it. Your Honor, in that case – Intentional. Yes, in that case, we can see that if there was intentional destruction of documents, that under federal common law, the rule would be that there can be an adverse presumption applied. And we would have jurisdiction to decide that question, I take it? Yes, Your Honor. Under – I mean, what aspect of our jurisdiction over veterans' claims would you point to as the basis? Well, here's the thing about this. Your Honor, I can't answer that question on the document. I guess probably a construction of a statute. That is to say, the statute that is viewed as – the statutory structure is viewed as incorporating some, at least, common law rules of evidence. Your Honor, 7292, which I believe is what the Court is referring to now, is highly complicated. I guess I wouldn't venture to jump into that at this point. But we do believe it is inconsistent with the statutes, not only in terms of 5107, but also Congress has provided presumptions. Mr. Cromer's counsel in their brief provided one example, which is a combat veteran presumption. There are two other presumptions we've mentioned, one for active duty, another one for certain exposure to herbicides, chemicals in Vietnam. There are other presumptions. But to answer, I think, to address Judge Garris' question, you're not arguing that, gee, there are already a bunch of presumptions. You've used up all the presumptions that are available? I mean, you're not making an argument like that. No, Your Honor. This presumption, I think you just acknowledged, at least in Judge Garris' case of intentional destruction, would be readily applicable. Your Honor, there are presumptions that courts have created in the presumption of an event of intentional destruction of documents. This is a presumption that relates to the conduct of the parties during litigation. That's really what it's geared towards. The primary rationale is an evidentiary rationale that if you know of litigation, you know that a document might be relevant, and you destroy it, that has relevance to that case. And the court, either using a presumption or, in some cases, issuing sanctions, can address that conduct. But it's the conduct of a party in litigation, and it's wrongful conduct. And again, in this case, we have no – there's no allegation of wrongful conduct by the VA. And so that sort of presumption, which is really a presumption going to the conduct of the parties during litigation, is not applicable. Well, would they have to prove the fact that maybe the government did not properly protect those documents with fireproof buildings and otherwise? They just put them in a barn in Missouri somewhere and just stored them there? What kind of duties would the government have in order to preserve those documents, which are necessary for the litigation? And the government is the only party that has possession of them. Your Honor, we would say that that would be a question that would not be relevant to this case just because the destruction of the documents was in 1973. Mr. Cromer filed his claim in 1993, 30 years later, so there can hardly be an argument that this was done in anticipation or because of litigation. Well, I mean, you can certainly change the facts a little and I think make the rationale at least behind your conceded application of the presumption a pretty compelling case for it. If, for example, Mr. Nicholson were to direct that all the service records for all veterans be destroyed tomorrow on the theory that the government is just paying out too many benefits, and if we get rid of these nettlesome records, we won't have to pay as many benefits, I think you'd agree that that would give some force to an argument for an evidentiary presumption in favor not only of those people who happen to be in litigation at the moment, but also people who came later, wouldn't you? Yes, Your Honor. Okay, so so much for the argument that this only applies for people that are involved in litigation at the moment of the destruction of evidence, correct? Well, Your Honor, that is a relevant fact that a lot of courts have looked to. I understand, but I thought you were just making the point that this can't possibly apply to Mr. Cromer because he wasn't litigating in 1973. That's not your argument, right? Well, Your Honor, I think that does go to the weight of this, and the issue, Your Honor, is that all the cases cited by the appellant in this case are cases which stand for the proposition that either there must be bad faith on the part of the party which lost or destroyed the documents or intentional destruction, and at a minimum, there are a few circuits which have held it must be negligence, but in this case we have none of those. I would like to, before moving on, also address some of the evidence that was in this case because I think it relates to some of the issues that have come up. There was in fact evidence, and Mr. Cromer's counsel has suggested that the only evidence that there could possibly be on this point was the service medical records, but that's not the case. In this case, the VA found records from the Surgeon General's office which referred to only common ailments in two periods of hospitalization. In addition, there was no indication in the record of any sort of dementia occurring prior to the 1980s. So from 1945, when he alleges that he had this... But that goes to nexus, not to incidence, right? And the real issue was, as I understand it, that was focused on by the board was there's no proof that anything happened to him in the service. There was never any such operation. That is the primary issue, but he also alleges that he incurred some brain damage as a result of that. There was no indication that there was any brain damage. Well, his argument is that it was latent and it's now manifested itself. But tell me if I'm misapprehending this, but my understanding was that he had his testimony and the testimony of relatives. I forget whether it was a sister or two relatives, that he had in fact had this operation, an operation which involved drilling into his skull, right? And the board said, well, we don't have to have him examined by a VA physician because what would they find? That sounds unlikely since I would think an operation drilling into your skull would leave some kind of mark that a physician could probably tell. Am I overstating the strength of the evidence on his side on this? Your Honor, we believe that it is an overstatement of the facts. All right. What aspect of what I've recited is wrong? The first part is there was a letter from, I believe, his sister, and that letter referred to a phone call from the Red Cross. This letter was written in late 1990s. There's actually no reference to the burgle. The burgle reference was his claim, and that was part of the board's decision, was that given all the medical record that there is, and I think he was operating a jackhammer in the 1980s, so he was hospitalized for that. He had various hospitalizations, but none of these hospitalizations turn up any record of a burgle or any of the events that occurred. There's no indication of any mention by Mr. Cromer of these events prior to about the time that he filed a claim for benefits. Your Honor, Congress has addressed the presumptions, and our point with the presumptions that Congress has addressed is that this is a matter that's been given to Congress to decide these sorts of evidentiary presumptions.  I thought we had established that this was an evidentiary presumption that could be created as a common law matter, and in fact I thought I heard you say that it would be correct to do so in the appropriate case. Your Honor, but only as to if it was an issue of the conduct of the parties. Well, okay, but I mean the fact that Congress hasn't created this presumption is not an argument once you've said there is some room for the court to create a presumption. Your Honor, I think that there is a distinction between the types of presumptions, because this court has previously addressed a presumption, and whether or not it was the presumption of regularity, whether or not that conflicts with the 5107, and the court's decision turned on the fact that the presumption was a different sort than the burden of proof. It was addressing a procedural issue that was separate in part from the burden of proof that the agency has to come forward. So our position is that the agency does have, that the claimant does have this burden to come forward with evidence, and Congress has set forth a variety of rules and presumptions that provide in some cases exceptions and provide various rules. In addition, Congress has provided and authorized the agency to develop and elaborate on those rules, and the VA has not seen fit to do that in this situation, create the double presumption that Mr. Cromer advocates. Instead, what the VA has done is created a requirement in its VA adjudication manual that the agency look for alternative sources of evidence. In this case, they did that, and they found the Surgeon General extracts, and there was other evidence in this case that the court found, that the board found, that the proponents of the evidence weighed against the claimant. So in light of the conflict that Mr. Cromer's double presumption presents with the statutes, the VA's rules, and the federal common law, we do not believe that this court, even if it were to address this issue and reach the jurisdiction, that it would be appropriate to accept that as a valid presumption. Thank you, Your Honor. Mr. Martin, you have a couple of minutes for rebuttal. Thank you, Your Honor. Very briefly, I want to first turn to a question by Judge Gararza on the last portion of the argument, and he asked about the proof of negligence and then what if the records were just in the barn. And here's why the adverse presumption needs to be tailored a little bit for the VA setting. I think we've all agreed that in the right circumstances now, the adverse presumption could apply. The government's standard is just that it either has to be bad faith or negligence has to be proven. But we're in the VA system, and the veteran doesn't have the types of exploratory measures that are available to private litigants. Everywhere else, the adverse presumption has been applied. Mr. Cromer can't go out and take depositions under the VA system. He can't issue subpoenas. He can't issue interrogatories. He can't explore whether or not there was negligence in the first place, which is why he should be entitled to this presumption, nor should he need to. Mr. Cromer is a 79-year-old man with dementia. The idea that he should have to go back and the burden should be on him in order to be able to prove, which other litigants can do in civil law but the veteran doesn't have the availability, that he should have to go out and prove that the government was negligent in 1973 in losing his documents, that's the reason why if you call it a double presumption, as Judge Lynn asked, or whether you just don't require negligence, again, we have other safeguards, but no requirement of negligence, that that's the way the rule should be applied in the VA system. So if you start with the premise that you should have an adverse presumption, which we all agree with, it would be impractical and basically eliminate the entire adverse presumption if it were on the veteran to have to go out and prove negligence or bad faith. One other point I'd like to point out, Your Honor, on the point of justiciability, what happened with preponderance of the evidence is exactly as Judge Bryson indicated by his questioning, and that was the first thing that the board did is it went out and said, what's the evidence? And it said the problem with Mr. Cromer's claim, and that was its worth, were that he doesn't have any evidence to prove the in-service occurrence. And as a result of that, we saw the domino effect. It threw out three doctors' opinions afterwards. It threw out the sister's opinion. If you weigh in that presumption and you give some credibility to three different physicians' statements because now you're presuming that there was some evidence of the in-service occurrence, then when you re-weigh the evidence, you may very well get a different result, which is the very basis of the appeal in the first place. Two other very quick points to correct on the record. The first is that the government, I think, mistakenly said that there's no evidence of any problems prior to the 1980s. I would point the court to JA-27, which is one of the physician statements by a 20-year treating physician that noted three suicide attempts in the 1950s, the next decade after this happened, and then continued psychiatric treatment after that, both at one institution and through a reverend that he was seeing for psychiatric issues. So that's in the record. And finally, on the statement of the service medical records, the two ailments that were listed there were actually entirely consistent, as the doctors noted, with him getting the encephalitis and the high fever. Pharyngitis was one of them, and the paratonsal or abscess were the others. Both of these are bacteria-related. Both of them would be either symptoms of or precursors to the encephalitis that Mr. Cromer suffered, and all three doctors verified that point. In light of that evidence, we would suggest, Your Honors, that a remand would be appropriate, with an inference given to Mr. Cromer that the documents would have supported his position. Thank you, Mr. Moore. Mr. Moore, I noticed you were not on the brief. Are you with the Veterans Law Group or a different organization here in Washington? What's your affiliation? I'm with the Finnegan-Henderson firm. All right, and this is pro bono. That's sort of what I was fishing for. The Court appreciates your willingness to take this on in your argument. Well, I didn't see my name. No. I didn't see your name, but the Court does thank you for your service, and we also thank Mr. Gilbert. Thank you.